IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGANNE BIXLER, *et al.*,

        Plaintiffs,

      vs.                                        No.   **CIV 08-676 MCA/DJS**

J. DOUGLAS FOSTER, *et al.,*

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions: (1) Defendant *Uranium King Limited's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)* [Doc. 47] filed on September 12, 2008; (2) *Defendant Michael Comeau's Motion for Judgment on the Pleadings* [Doc. 58] filed on October 14, 2008; (3) *Defendant Foster's Motion to Dismiss* [Doc. 80] filed on December 9, 2008; (4) Plaintiffs' *Motion for Default Judgment* [Doc. 54] against Defendant Jim Malone filed on September 30, 2008; (5) *Plaintiffs' Motion to Substitute Monaro Mining NL for Uranium King Limited and Join Warwick Grigor, Chairman of the Board of Directors of Monaro Mining as Co-Defendant* [Doc. 53] filed on September 30, 2008; and (6) *Plaintiffs' Motion to Dismiss Defendant Michael Duncan and Sam Sapper's Counterclaims of Malicious Abuse of Process and Prima Facie Tort* [Doc. 35] filed on August 26, 2008. Having considered the parties' submissions, the applicable law, and otherwise being fully advised in the premises, the Court denies the Plaintiffs' motions, grants the Defendants' motions, and orders Plaintiffs to show cause why

their claims against the remaining Defendants should not be dismissed under Fed. R. Civ. P. 12(b)(6) or 12(c) for the reasons set forth below.

I.      **BACKGROUND**

This action arises from a dispute among certain shareholders and directors of METCO, a New Mexico uranium mining company, concerning transactions in which METCO's uranium mining claims located in New Mexico and Nevada were traded to subsidiaries of Uranium King Limited (UKL), an Australian corporation, in exchange for shares of UKL stock, after which UKL pursued a merger with Monaro Mining NL (Monaro), another Australian corporation.  As part of that merger, the METCO assets are to be traded to Monaro.

Plaintiffs Georganne Bixler, Buddy Jack Kennemur, Carroll SoRelle, and Dean Coleman are minority shareholders in METCO who are dissatisfied with this trade of METCO's uranium properties for shares of stock in UKL, Monaro, and/or their subsidiaries. According to Plaintiffs' *Complaint* [Doc. 1], Defendants Michael Duncan and Sam Sapper are directors of METCO who, along with Karl Meyers (who is not a party to this lawsuit), constitute the owners of Consolidated International Resources LLC, a Nevada limited liability company that owns a majority (about 75%) of all outstanding shares of METCO stock.  UKL and its Executive Director, Jim Malone, also are named as Defendants in Plaintiffs' *Complaint*.  Finally, Defendants J. Douglas Foster, Michael Comeau, Paul Fish, and Fred "Pete" Gibson are attorneys who allegedly represented other Defendants with respect to the above transactions.

2

According to Plaintiffs' *Complaint*, all of the Defendants have benefitted financially from the above transactions, while Plaintiffs have received no benefit as METCO's minority shareholders.   Plaintiffs further allege that through their involvement in the above transactions, the Defendants have engaged in various forms of misconduct aimed at defrauding METCO and its minority shareholders.   Plaintiffs claim that such alleged misconduct is actionable under the Racketeering Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962, and that Defendants are liable under that statute for treble damages, attorney fees, costs, and punitive damages, plus pre- and post-judgment interest. [Doc. 1.]

Defendants Fish, Duncan, Sapper, Comeau, Foster, and Gibson filed answers to Plaintiff's *Complaint* in which they denied Plaintiff's claims and asserted a number of affirmative defenses.   [Doc. 7, 9, 15, 16, 33]   Defendants Duncan and Sapper also filed a counterclaim for malicious abuse of process or *prima facie* tort in conjunction with their *Answer*.   [Doc. 9.]

On August 26, 2008, Plaintiffs filed a motion to dismiss the counterclaim asserted by Defendants Duncan and Sapper.   [Doc. 35.]   On September 12, 2008, Defendant UKL filed a motion to dismiss Plaintiffs' claims.   [Doc. 47.]   Plaintiffs did not file a timely response to Defendant UKL's motion to dismiss.   On September 30, 2008, however, Plaintiffs filed a motion to substitute Monaro for UKL and join Monaro's chairman of the board, Warwick Grigor, as an additional Defendant.   [Doc. 53.]   On that same date, Plaintiffs filed a motion for default judgment against Defendant Jim Malone.   [Doc. 54.]

3

On October 14, 2008, Defendant Comeau filed a motion for judgment in his favor on the pleadings.  [Doc. 58.]  Defendant Foster followed with a motion to dismiss raising similar arguments that was filed on December 9, 2008.  [Doc. 80.]  Briefing on the last of the above motions was completed on January 12, 2009.  [Doc. 86.]

## II.   ANALYSIS

### A.   Motions to Dismiss or Render Judgment on the Pleadings [Doc. 47, 58, 80]

The Court first addresses the pertinent arguments raised by Defendants UKL, Comeau, and Foster in their motions to dismiss or render judgment on the pleadings based on Plaintiffs' failure to state a claim upon which relief can be granted.  The Supreme Court recently clarified the standard of review applicable to motions brought under Fed. R. Civ. P. 12(b)(6).  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).  The same standard applies to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). See Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 550 (6th Cir. 2008) (applying Twombly to a Rule 12(c) motion).

A complaint is subject to dismissal under the above rules if it does not "possess enough heft to sho[w] that the pleader is entitled to relief."  Twombly, 127 S. Ct. at 1966 (internal quotation marks omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (citation and footnote omitted).

In articulating this standard, Twombly abrogated the Supreme Court's earlier pronouncement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Twombly, 127 S. Ct. at 1968.  This language from the Conley opinion is problematic because, when read literally and in isolation, it could suggest that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  Twombly, 127 S. Ct. at 1968.

The "practical significance" of such a literal reading of Conley is that it may force defendants to go through the burden and expense of conducting discovery before they are afforded their first real opportunity to seek the dismissal of groundless claims.  Id. at 1966 (citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005)).  Plaintiffs, in turn, may use this additional burden and expense of conducting discovery as leverage to induce an otherwise unjustified settlement of such groundless claims.  See id. at 1966-67.

To combat such abuses, the Twombly opinion emphasizes that when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court."  Id. (quoting Daves v. Hawaiian Dredging Co., 114 F. Supp. 643,

645 (D. Hawaii 1953)).  The Court's concern with disposing of groundless claims in an efficient and timely manner takes on added significance in the context of RICO and securities litigation, because of the complex nature of a civil RICO claim as well as the voluminous and costly discovery that these types of claims can engender.  See Limestone Dev. Corp. v. Village of Lemont, 520 F.3d 797, 802-03 (7th Cir. 2008); cf. Dalton v. City of Las Vegas, 282 Fed. Appx. 652, 654-55 (10th Cir. June 12, 2008) (unpublished disposition citing Twombly as grounds for dismissing a RICO claim).

Here Defendants UKL, Comeau, and Foster point to at least two substantive defects in Plaintiffs' pleading that warrant dismissal.  First, as minority shareholders in METCO, Plaintiffs lack standing to bring a claim under the RICO statute for an injury to the company's business or property that has only an indirect impact on their interests as shareholders.  See Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990); Leach v. FDIC, 860 F.2d 1266, 1273-74 (5th Cir. 1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 640-41 (9th Cir.1988); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 29-30 (1st Cir. 1987); Warner v. Alexander Grant & Co., 828 F.2d 1528, 1530 (11th Cir.1987); Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986); Warren v. Mfrs. Nat'l Bank, 759 F.2d 542, 544 (6th Cir.1985); cf. Tal v. Hogan, 453 F.3d 1244, 1253-54 (10th Cir. 2006) (concluding that a corporate officer did not have standing to assert an individual RICO claim for conduct which harmed the corporation); Marchman v. NCNB Texas Nat'l Bank, 120 N.M. 74, 81-83, 898 P.2d 709, 716-18 (1995) (applying state law).  Thus, alleged injuries that stem from Plaintiffs' status as minority shareholders do not "possess enough heft to sho[w] that the

6

pleader is entitled to relief" under the RICO statute.  Twombly, 127 S. Ct. at 1966.

Second, the transactions at issue here cannot serve as the predicate acts necessary to support a civil RICO claim because they involve alleged fraud in the purchase or sale of securities, and the Private Securities Litigation Reform Act (PSLRA) precludes a civil RICO claim under these circumstances.  See 18 U.S.C. § 1964(c); Swartz v. KPMG LLP, 476 F.3d 756, 761 (9th Cir. 2007); Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 329-30 (3d Cir. 1999); Eagletech Communications Inc. v. Citigroup, Inc., No. 07-60668-CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008); Blythe v. Deutsche Bank AG, 399 F. Supp. 2d 274, 278 (S.D.N.Y. 2005); Gatz v. Ponsoldt, 297 F. Supp. 2d  719, 730-31 (D. Del. 2003); Burton v. Ken-Crest Servs., Inc., 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001). Plaintiffs cannot avoid dismissal on these grounds merely by leaving open the speculative possibility that they might later find some artful method of pleading their way around the securities-fraud allegations at the heart of their *Complaint*.  See Twombly, 127 S. Ct. at 1965-68.

As Defendants UKL, Comeau, and Foster must be dismissed from this action based on Plaintiffs' lack of standing and the PLSRA's preclusion of RICO claims based on alleged securities fraud, it is unnecessary for the Court to address the other arguments raised in their motion papers.  The remaining question is whether the dismissal of Plaintiffs' claims against these Defendants should be with or without prejudice.

In some instances, it could be argued that a plaintiff's lack of standing or the PSLRA's preclusion of RICO claims based on alleged securities fraud should give rise to a dismissal

without prejudice based on a lack of subject-matter jurisdiction.  In this instance, however, the Court determines that such basic defects in Plaintiffs' *Complaint* against Defendants UKL, Comeau, and Foster cannot be cured through an amendment of Plaintiffs' pleading, and in any event Plaintiffs have not sought to amend their *Complaint* through timely and proper means.  See Sears, 912 F.2d at 893; Swartz, 476 F.3d at 761; cf. Gatz, 297 F. Supp. 2d at 731 ("A plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading."); Bruner v. Baker, 506 F.3d 1021, 1030 (10th Cir. 2007) (noting that district courts may refuse to consider theories raised for the first time in a response or reply brief).  Therefore, Plaintiffs' claims against these Defendants will be dismissed with prejudice.

## B.   Motion for Default Judgment Against Defendant Jim Malone [Doc. 54]

On September 30, 2008, Plaintiffs moved for a default judgment against Defendant Jim Malone claiming that he failed to file a timely answer to the *Complaint* despite having "actual notice" of this litigation since at least August 4, 2008, when Plaintiffs allegedly served Mr. Malone's employer, Defendant UKL, with a summons and a copy of the *Complaint*.  [Doc. 54.]  Defendant Malone filed a response on October 3, 2008, stating that he is a resident and citizen of Australia and was never properly served with the summons and *Complaint* in accordance with Fed. R. Civ. P. 4(f).  [Doc. 57.]

The law in this circuit requires that "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant." Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997).  Thus, before

entering a default judgment "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  Williams v. Life Sav. and Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1994).  Further,  it is erroneous to enter a default judgment if, as a matter of law, Plaintiffs' *Complaint* fails to state a claim upon which relief may be granted.

> [A] defendant's default does not in itself warrant the court entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered . . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. . . .  In short, . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover.

Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

In this instance, I am not convinced that this Court has jurisdiction over Defendant Malone or the subject matter of Plaintiff's *Complaint* against him.  The materials submitted with Plaintiffs' *Motion for Default Judgment* do not evince proper service under Fed. R. Civ. P. 4, and for the reasons previously discussed with reference to the motions filed by Defendants UKL, Comeau, and Foster, it appears that Plaintiffs' claims against Defendant Malone also would be barred due to the "direct injury" requirements for standing to pursue a RICO claim as well as the PLSRA's preclusion of RICO claims premised on alleged securities fraud.  For these reasons, Plaintiffs' motion for default judgment against Defendant Malone is denied.

**C.    Motion to Join or Substitute Parties [Doc. 53]**

While failing to file a timely response to Defendant UKL's motion to dismiss,

Plaintiffs did file a motion to substitute Monaro Mining NL for UKL and join the chairman of Monaro's board of directors, Warwick Grigor, on September 30, 2008.  [Doc. 53.] Plaintiffs' motion lists a number of factual allegations concerning the merger of UKL and Monaro, but fails to cite any relevant legal authority to support the requested substitution and joinder.

As Defendant UKL points out in a written response to Plaintiffs' motion, neither substitution of a real party in interest under Fed. R. Civ. P. 17 nor the provisions regarding joinder under Fed. R. Civ. P. 19 provide a procedural mechanism for dismissing or substituting an *adverse* party, or adding a new *defendant* to this litigation.  Moreover, adding new theories or citing additional evidence in a response or reply brief does not have the effect of amending the pleadings, and the Court does not permit Plaintiffs to amend their pleadings or to present new arguments or evidence through such means in this case.  See Bruner, 506 F.3d at 1030 (concluding that a response brief did not have the effect of amending the pleadings); FDIC v. Noel, 177 F.3d 911, 915-16 (10th Cir. 1999) (concluding that it is improper to raise an argument for the first time in a reply brief because doing so precludes a response by the non-movant and prevents reasoned consideration by the district court).

Rather, a timely motion under Fed. R. Civ. P. 15(a) provides the appropriate procedure for requesting leave to amend Plaintiffs' pleading for the purpose of dismissing Defendant UKL, substituting Monaro in its place as a party defendant, and adding Warwick Grigor as a new defendant.  See Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993).  It is within the Court's discretion, however, to deny leave to amend a pleading under

10

Fed. R. Civ. P. 15(a), or to deny a motion to substitute parties under Fed. R. Civ. P. 25(c), based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996) (applying Fed. R. Civ. P. 15(a)); National Indep. Theatre Exhibitors, Inc. v. Buena Vista Dist. Co., 748 F.2d 602, 610 (11th Cir. 1984) (applying Fed. R. Civ. P. 25(c)).   A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).

In this instance, Plaintiffs have not requested leave to amend their pleading through a timely motion citing the correct rule, and the requested "substitution" or "joinder" of additional Defendants would be futile.  Regardless of which person or entity Plaintiffs wish to add to their already lengthy list of Defendants allegedly involved in the land/stock transfer between METCO and UKL or the merger between UKL and Monaro, the Court has already concluded that Plaintiffs lack standing to assert a RICO claim regarding these transactions and that such a claim is precluded by the PSLRA.  Insofar as these two incurable defects in Plaintiffs' pleading render an amendment futile, it is unnecessary for the Court to address the other potential defects which might otherwise be cured through an amendment or through further efforts at service of process.  Plaintiffs' to motion to substitute Monaro Mining NL for UKL and join Monaro's chairman, Warwick Grigor, is therefore denied.

**D.**     <u>**Plaintiffs' Motion to Dismiss Counterclaims Asserted**</u>
         <u>**by Defendants Duncan and Sapper [Doc. 35]**</u>

Defendants/Counter-Plaintiffs Duncan and Sapper (hereinafter Counter-Plaintiffs) have filed a counterclaim against the Plaintiffs asserting that this lawsuit is one of a series of groundless actions that Plaintiffs have pursued with regard to the disputed trade of the METCO properties for UKL stock and the merger of UKL with Monaro.  Based on such actions, the Counter-Plaintiffs contend that Plaintiffs are liable for malicious abuse of process or *prima facie* tort under the common law of the State of New Mexico.  [Doc. 9.]

On August 26, 2008, Plaintiffs moved to dismiss this counterclaim on the grounds that this counterclaim fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  [Doc. 35.]   In particular, Plaintiffs allege that the counterclaim constitutes a "strategic lawsuit against public participation" (SLAPP) aimed at punishing, intimidating, or retaliating against persons who wish to speak out against a matter of public concern. Plaintiffs' motion cites legal principles commonly used in dismissing SLAPP suits, such as "Petition Clause immunity" and the "*Noerr-Pennington* Doctrine," and suggests that this Court take a similar approach to analyzing tort actions that have a potentially chilling effect on the First Amendment right to petition.

Plaintiffs then cite <u>DeVaney v. Thriftway Marketing Corp.</u>, 1998-NMSC-001,124 N.M. 512, 953 P.2d 277 (1997), for the proposition that Counter-Plaintiffs' malicious abuse of process counterclaim fails to meet the burden of proof required of such a counterclaim in these circumstances.  Plaintiffs further allege that a cause of action for *prima facie* tort is not

available here because it is duplicative of the counterclaim for malicious abuse of process. See Healthsource, Inc. v. X-Ray Associates of N.M., 2005-NMCA-097, ¶ 35, 138 N.M. 70, 116 P.3d 861.

In resolving these contentions, the Court applies the same standard of review to the counterclaim that it has previously applied to the other Defendants' motions to dismiss Plaintiffs' RICO claim. See Twombly, 127 S. Ct. at 1964-66. This standard requires the Court to view the well-pleaded factual allegations in the light most favorable to the non-movant and to construe all reasonable inferences in its favor. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1236 (10th Cir. 2007). Further, the parties are not required to plead evidence or meet an evidentiary burden in their pleading in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002). And for the reasons previously stated, the Court does not consider evidence submitted for the first time with a reply brief. See Noel, 177 F.3d at 915-16.

In this case, I conclude that Plaintiffs' invocation of principles applicable to SLAPP suits is inapposite. The relevant authority for determining whether the counterclaim at issue here states the essential elements of the tort of malicious abuse of process is Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, 142 N.M. 150, 164 P.3d 31. LeDoux already accounts for the need to avoid chilling the right of access to the courts; it also abrogates the higher burden of proof for counterclaims suggested in Devaney, 1998-NMSC-001, ¶ 25. See LeDoux, 2007 NMSC-047, ¶¶ 20, 30.

Under New Mexico law, the tort of malicious abuse of process is:

"defined by the following elements:  (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages."

LeDoux, 2007-NMSC-047, ¶ 12 (quoting DeVaney, 1998-NMSC-001, ¶ 17).  The Counter-Plaintiffs' counterclaim provides more than just a "formulaic recitation" of these elements, as required under Twombly, 127 S. Ct. at 1964-65.

In particular, the counterclaim sets forth, albeit in summary form (1) a history of the litigation and other complaints that Plaintiffs have generated, (2) the alleged impropriety in prosecuting the claims (*i.e.*, lack of probable cause and actual knowledge that the claims lack merit), (3) the Plaintiffs' alleged motives and illegitimate ends (*i.e.,* harassment, attempted extortion, interference with contractual rights, and interference with the right to counsel), and (4) the damages allegedly caused by such improprieties (*i.e.*, attorney fees and expenses incurred in defending against the claims).   [Doc. 9.]   I therefore conclude that the counterclaim for malicious abuse of process is not subject to dismissal under Fed. R. Civ. P. 12(b)(6) at this preliminary juncture.  The question whether Counter-Plaintiffs can present sufficient evidence to *prove* this counterclaim at trial is not properly before the Court at this time, because a motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not require the non-movant to plead or proffer such evidence, particularly when the movant's evidence is offered for the first time in a reply brief.

Plaintiffs' motion to dismiss the counterclaim for *prima facie* tort presents a closer

14

question.  Under state law, there is authority for the proposition that *prima facie* tort may be pled in the alternative at the pleadings stage.  <u>See</u> <u>Schmitz v. Smentowski</u>, 109 N.M. 386, 396, 785 P.2d 726, 736 (1990); <u>Aetna Fin. Co. v. Gaither</u>, 118 N.M. 246, 249, 880 P.2d 857, 860 (1994).  The federal authorities that Counter-Plaintiffs cite for this proposition, however, predate our Supreme Court's opinion in <u>Twombly</u>, which generally disfavors allowing a party to plead a generic or formulaic claim that is heavily contingent upon the discovery of additional facts to flesh it out at some future date.

Under the particular circumstances of this case, I determine that Plaintiffs' motion to dismiss the counterclaim for *prima facie* tort should be denied *without prejudice* at this juncture, subject to reconsideration in the event that this Court retains supplemental jurisdiction over the counterclaim under state law after the pending questions regarding the viability of Plaintiffs' federal RICO claim are resolved.  <u>Cf.</u> <u>Exum v. U.S. Olympic Comm.</u>, 389 F.3d 1130, 1139 (10th Cir. 2004) (noting that a district court may decide whether to exercise supplemental jurisdiction over counterclaims based on state law after judgment is granted on all federal claims).  If the Court retains supplemental jurisdiction over the counterclaim for *prima facie* tort, then that counterclaim will be subject to the standard for dismissal stated in Fed. R. Civ. P. 12(b)(6).  If, on the other hand, the Court declines to exercise supplemental jurisdiction over this counterclaim at a later date, then the question whether <u>Twombly</u> should be adopted as a matter of state law and applied to the rules for pleading a *prima facie* tort claim in the alternative can be presented to a state court in the first instance.

**D.**     **Order to Show Cause**

For the reasons discussed above, it appears that Plaintiffs' claims against the remaining Defendants, as well as those whom Plaintiffs would attempt to join or substitute as additional Defendants, are subject to dismissal on at least two of the grounds that were successfully raised by Defendants UKL, Comeau, and Foster.  Accordingly, the Court will order Plaintiffs to show cause in writing by no later than April 10, 2009, as to why their claims against the remaining Defendants should not be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) or 12(c) on these grounds.  The remaining Defendants may submit reply briefs no later than ten working days after Plaintiffs' written response to this *Order to Show Cause* is filed with the Court; however, these Defendants should not submit new evidence or new grounds for dismissal for the first time with their reply brief, and no surreplies or supplemental briefing will be permitted after the filing of such reply briefs.

**III.**     **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against Defendants UKL, Comeau, and Foster are dismissed with prejudice; Plaintiffs' motion for a default judgment against Defendant Malone is denied; Plaintiffs' motion to substitute Monaro Mining NL and Warwick Grigor is denied; and Plaintiffs' motion to dismiss the counterclaim of Defendants Duncan and Sapper is denied without prejudice.  In addition, the Court orders Plaintiffs to show cause in writing by no later than April 10, 2009, why their claims against the remaining Defendants should not be dismissed under Fed. R. Civ. P. 12(b)(6) or 12(c).

**IT IS THEREFORE ORDERED** that Defendant *Uranium King Limited's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)* [Doc. 47] is **GRANTED**, and Plaintiffs' claims against Defendant UKL are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that *Defendant Michael Comeau's Motion for Judgment on the Pleadings* [Doc. 58] is **GRANTED**, and Plaintiffs' claims against Defendant Comeau are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that *Defendant Foster's Motion to Dismiss* [Doc. 80] is **GRANTED**, and Plaintiffs' claims against Defendant Foster are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' *Motion for Default Judgment* [Doc. 54] against Defendant Jim Malone is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion to Substitute Monaro Mining NL for Uranium King Limited and Join Warwick Grigor, Chairman of the Board of Directors of Monaro Mining as Co-Defendant* [Doc. 53] is **DENIED**.

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion to Dismiss Defendant Michael Duncan and Sam Sapper's Counterclaims of Malicious Abuse of Process and Prima Facie Tort* [Doc. 35] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs are directed to show cause in writing by no later than April 10, 2009, as to why all of their claims against the remaining Defendants should not be dismissed with prejudice for the reasons stated above.

**IT IS FURTHER ORDERED** that the remaining Defendants may submit reply briefs no later than ten working days after Plaintiffs' written response to this *Order to Show Cause* is filed with the Court; however, these Defendants should not submit new evidence or new grounds for dismissal for the first time in their reply brief, and no surreplies or supplemental briefing will be permitted after the filing of such reply briefs.

**SO ORDERED** this 31st day of March, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

18